**STAHL SPECIALITY COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**No. 80–0811–CV–W–8.**

United States District Court,
W.D. Missouri, W.D.

Oct. 22, 1982.

Joel B. Voran, of Gage & Tucker, Kansas City, Mo., for plaintiff.

G. Scott Nebergall, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

MEMORANDUM OPINION
AND JUDGMENT

STEVENS, District Judge.

This action for recovery of federal income taxes is before the court on cross motions for summary judgment based on the Standard Pretrial Order No. 2 and Stipulation of Uncontroverted Facts. This court has jurisdiction under 28 U.S.C. § 1346(a)(1).

Plaintiff Stahl Speciality Company, a Missouri corporation, manufactures and sells a variety of aluminum castings and

related equipment. During its taxable year ending June 30, 1974, plaintiff learned that its former controller had embezzled a total of $724,582.00 over the preceding seven years, as follows:

| Taxable Year Ending June 30 | Amount Embezzled |
| --- | --- |
| 1968 | $ 23,411.00 |
| 1969 | 13,482.00 |
| 1970 | 49,836.00 |
| 1971 | 62,415.00 |
| 1972 | 84,237.00 |
| 1973 | 384,008.00 |
| 1974 | 107,193.00 |
| Total | $724,582.00. |

All embezzlements were accomplished by fictitious charges to plaintiff's purchases of raw materials, thereby increasing costs of sales and decreasing taxable income in each of the above years by the amount embezzled during such year. Plaintiff's tax returns for the years prior to discovery (1968 to 1973) reflect the correspondingly decreased amounts of taxable income.

Plaintiff recovered a total of $76,680.06 of the embezzled funds from various sources. On its 1974 return, plaintiff claimed the remainder ($647,901.94) as a deduction for the net embezzlement loss. After an audit of the return, the IRS proposed to increase taxable income by $591,-785.97 [1] because the amounts embezzled in years prior to 1974 had inflated the cost of goods sold, thus causing an equal understatement of taxable income for those years. Plaintiff's tax liability for 1974 was increased by $284,057.27 plus interest, which plaintiff paid on October 3, 1975, while preserving all rights to contest its liability. On September 27, 1977, plaintiff timely filed for a refund, which the IRS denied. Plaintiff has exhausted its administrative remedies.

Plaintiff's position is simply that under I.R.C. § 165(a) and (e), it is entitled to deduct the embezzlement loss in the year of discovery. Defendant contends "that since plaintiff received a prior tax benefit for the amounts embezzled from it in the form of artificially inflated cost of goods sold deductions in the years the embezzlements took place, it may not claim an additional deduction pursuant to Section 165(e) in 1974, the year the loss is discovered." *Suggestions in Support of Defendant's Cross Motion for Summary Judgment* at 6.

Both sides have briefed the issues extensively,[2] but "no sophisticated analysis is necessary to impel the simply-stated conclusion that a theft loss deduction should be disallowed where the proceeds embezzled were never reported as income and, accordingly, no tax was paid on them." *Martin Gluck & Sons, Inc. v. United States,* 39 A.F.T.R.2d (P–H) 77–1014 (W.D.Pa. Feb. 4, 1977). In *Martin Gluck,* the taxpayer's bookkeeper embezzled cash receipts before any records of the sales were made, thus the taxpayer had reported a correspondingly reduced gross income. In the instant case, the embezzlement was concealed by recording false expenses, but the result is the same as in *Martin Gluck:* gross income was understated by the amount embezzled. Therefore, to allow the deduction claimed here would amount to a double tax benefit—once on the reduced income shown during the years of embezzlement and again in the year the losses were discovered and deducted.

Plaintiff places great reliance on *B.C. Cook & Sons, Inc. v. Commissioner,* 59 T.C. 516 (1972) (*Cook* I) and *B.C. Cook & Sons, Inc. v. Commissioner,* 65 T.C. 422 (1975), aff'd, 584 F.2d 53 (5th Cir.1978) (*Cook* II), litigation which involved the tax consequences of an embezzlement which reduced the gross income reported for several years prior to discovery of the scheme. In *Cook* I, a divided Tax Court held the taxpayer was entitled to the deduction in the year of discovery and suggested that the IRS reopen the taxpayer's previous returns to as-

1. The way in which the IRS arrived at this amount is explained in the Standard Pretrial Order No. 2 at 5–6.

2. Plaintiff has moved to strike defendant's last responsive pleading as outside the briefing schedule established by the court during a conference last fall. A review of notes taken during that conference shows plaintiff's counsel is simply mistaken. The schedule contemplated three filings by each side. The motion to strike is therefore denied.

sess deficiencies in those years. The IRS did not appeal *Cook* I. When the IRS then attempted to reopen the taxpayer's returns for the years in which embezzlement had occurred, the Tax Court held in *Cook* II that the statute of limitations barred such action. Likewise, the statute of limitations would preclude the reopening of most or all of plaintiff's returns for the years in which embezzlement occurred.

This court declines to follow *Cook.* The author of *Cook* I recanted in *Cook* II (65 T.C. at 432 (Dawson, C.J., concurring)), and in affirming *Cook* II, the Fifth Circuit nonetheless condemned it as an inequitable result (584 F.2d at 54). *Cook* should be limited to its peculiar procedural facts.

The result reached here makes it unnecessary to discuss the issues raised by the adjustment of plaintiff's investment tax credit carrybacks for 1971 and 1972.

For the reasons stated, it is

ORDERED that defendant's Motion for Summary Judgment is granted, and plaintiff's Motion for Summary Judgment is denied. Judgment is entered in favor of defendant and against plaintiff on plaintiff's complaint for recovery of federal income taxes. It is further

ORDERED that each party shall bear its own costs.