F I L E D
United States Court of Appeals
Tenth Circuit

JUN 8 1999

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTHONY LEE SPENCER,

Defendant-Appellant.

No. 98-5136

---

APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CR-86-B)

---

James Clinton Garland, Commercial Litigation Group, of Tulsa, Oklahoma, for the appellant.

Stephen C. Lewis, United States Attorney, and John D. Russell, Assistant United States Attorney, of Tulsa Oklahoma, for the appellee.

---

Before **ANDERSON, KELLY,** and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Defendant Anthony Lee Spencer appeals from the sentence imposed following his guilty pleas to multiple counts of filing false and fraudulent tax returns. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm.[1]

## I.

In 1987, Spencer and a partner purchased out of bankruptcy two related companies, Sierra Testing, Inc., and Radiography Inspection, Inc. The companies were involved in conducting non-destructive, radiographic and ultrasonic testing on pipelines and related equipment. Spencer served as president and managed each corporation.

In April 1989, Spencer undertook a scheme to defraud the government by paying his employees approximately one-half their wages in the form of untaxed per diem or mileage reimbursements. This scheme not only permitted employees to understate their tax liability, but also allowed the companies to avoid sizable social security taxes by reducing employer matching withholdings. Spencer made this compensation arrangement a condition of each individual's employment. He also diverted a significant number of checks payable to Sierra Testing to secret

---

[1] After examining the briefs and appellate record, the panel has determined that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore, the case is ordered submitted without oral argument.

bank accounts under his control. The diverted income was not reported by Spencer or by Sierra Testing. This illegal conduct continued through December 1994 and was compounded by the filing of false and fraudulent tax forms, as well as the manufacturing of false documents and receipts.

In July 1997, a federal grand jury returned a thirty-seven-count indictment against Spencer, charging him with conspiracy to defraud the government, aiding and assisting in preparation of false and fraudulent tax returns, and subscribing to false and fraudulent tax returns. See 18 U.S.C. § 371; 26 U.S.C. §§ 7206(1), (2). On January 23, 1998, three days into his trial, Spencer pleaded guilty to all thirty-seven counts. Following a lengthy sentencing hearing, the district court sentenced Spencer to sixty-three months' imprisonment, imposed a $12,500 fine, and assessed court costs of $16,944.83.

The primary dispute at the sentencing hearing revolved around the tax loss computations for purposes of U.S.S.G. § 2T1.1. The presentence report, which was adopted by the district court, calculated the total tax loss at $777,606 ($477,816.46 from fraudulent mileage/per diem scheme, $184,285.01 corporate taxes owed by Sierra Testing from diverted income, $100,164.32 individual taxes owed by Spencer from diverted income, and $15,340.21 estimated taxes). [2] The

_____

[2] Spencer has created unnecessary confusion by omitting in his calculations the unreported wages of Sierra Testing and Radiography Inspection from the

(continued...)

-3-

presentence report arrived at these figures by utilizing the tax rate presumptions outlined in U.S.S.G. § 2T1.1(c)(1), Note A.

## II.

We review de novo questions of law regarding application of the sentencing guidelines, and review for clear error the district court's factual findings, mindful of our obligation to give "due deference" to the district court's application of the guidelines to the facts. United States v. Henry, 164 F.3d 1304, 1310 (10th Cir. 1999); 18 U.S.C. § 3742(e).

## III.

Spencer contends the district court erred in applying the sentencing guidelines by (1) improperly relying on the guidelines' presumptive tax rates, and (2) failing to attribute the tax loss from diversion of Sierra Testing's income to deductible officer compensation or embezzlement loss.

### Use of presumptive tax rates

Recognizing that tax loss will not be "reasonably ascertainable" (see U.S.S.G. § 2T1.1, comment. (n.1)), note A provides: "If the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income (34% if the taxpayer is a

---

[2](...continued)
companies' March 31, 1991, quarterly tax returns. These unreported wages formed part of count I of the indictment to which Spencer pleaded guilty.

corporation) . . . unless a more accurate determination of the tax loss can be made." Spencer insists the government had all relevant documents in its possession and easily could have calculated the *actual* tax loss without resorting to the guidelines' tax rate presumptions.

We note preliminarily that Spencer has identified no specific records from which a more accurate tax loss determination could have been made. His speculation and conclusory allegations will not suffice. Spencer claims his expert witness, Patrick Walters, testified the true average tax rate for Sierra Testing and Radiography Inspection employees was 10.97%. This statement is not faithful to the evidence. Walters, whose testimony was dubious at best,[3] averred only that average employee *withholdings* approximated 7.5%. As the government correctly notes, an employee's paycheck withholding is based on a myriad of factors, many of which bear no relationship to the actual amount of tax owed or the rate at which the income is taxed. Using Spencer's numbers, therefore, would not yield accurate results. See United States v. Hoover, 1999 WL 250229, at *3 (7th Cir. Apr. 28, 1999) (tax rate proposed by defendant's expert no more accurate than guidelines' 28% presumption and thus no clear error in relying on guidelines

---

[3] Not only did Walters suggest the presentence report overstated the tax loss, he also maintained Spencer was due a tax refund.

figure). [4]

Further, although the government bears the burden at sentencing of proving the amount of tax loss flowing from the defendant's illegal acts, see United States v. Rice , 52 F.3d 843, 848 (10th Cir. 1995), neither the government nor the court has an obligation to calculate the tax loss with certainty or precision. United States v. Bryant , 128 F.3d 74, 75 (2d Cir. 1997) (per curiam). Even though it is conceivable that close scrutiny of all employee tax returns over the full course of Spencer's fraudulent scheme may have generated a more accurate tax loss computation, it would be unreasonable to impose such a burden on the government or the court. Indeed, tax records may not be accessed by government agencies except under rare circumstances and only after satisfying rigorous administrative prerequisites. See 26 U.S.C. § 6103. Requiring precise calculations which entail the gathering of documents that are diffuse and/or difficult to obtain would reward a defendant whose tax fraud was particularly complex and/or spanned a significant period of time. [5]

---

[4] Guidelines' presumptions will not always favor the government. Because individual taxation rates often exceed 28%, see 26 U.S.C. § 1 (outlining marginal tax rates), a 28% figure may understate tax loss in many circumstances.

[5] Our conclusion that the district court properly included both corporate and individual tax underpayments in its calculation of the total tax loss also disposes of Spencer's purported mathematical error argument.

**Treatment of diverted corporate income**

*Executive compensation deduction*. Spencer contends if Sierra Testing had properly reported the income ultimately diverted to private accounts under his control, the company could have paid him the money legitimately in the form of executive compensation or bonuses. In particular, he suggests the payments could have been deducted pursuant to 26 U.S.C. § 162(a)(1), leaving the corporation with no tax underpayment as a result of the diverted funds. [6]

The Second Circuit recently observed in dicta that the current version of U.S.S.G. § 2T1.1, as amended in 1993, see U.S.S.G. App. C, Amendment 491, allows defendants to employ "legitimate but unclaimed deductions" in calculating tax loss. United States v. Martinez-Rios, 143 F.3d 662, 671 (2d Cir. 1998). We question this conclusion. The sentencing guidelines simply authorize a court to avoid the presumptive tax rates if a "more accurate determination of the tax loss can be made." U.S.S.G. § 2T1.1(c), Note A. We do not interpret this provision as giving taxpayers a second opportunity to claim deductions after having been

_____

[6] Spencer acknowledges he would remain personally responsible for taxation on these diverted funds. We agree. The government has no duty to prove the character of diverted funds; it must only establish the taxpayer's actual command over the funds. See United States v. Peters, 153 F.3d 445, 460-61 (7th Cir. 1998); United States v. Williams, 875 F.2d 846, 850 (11th Cir. 1989); United States v. Miller, 545 F.2d 1204, 1213-14 (9th Cir. 1976); Davis v. United States, 226 F.2d 331, 335-36 (6th Cir. 1955); but see United States v. D'Agostino, 145 F.3d 69, 72-73 (2d Cir. 1998) (diverted income taxable only if derived from corporate earnings and profits).

-7-

convicted of tax fraud. It must be remembered that, in tax loss calculations under the sentencing guidelines, we are not computing an individual's tax liability as is done in a traditional audit. Rather, we are merely assessing the tax loss resulting from the manner in which the defendant chose to complete his income tax returns.

In any event, this theory is of little use to Spencer. Even assuming the purported compensation/bonuses would have been sufficiently "reasonable" in amount to warrant a deduction, see 26 C.F.R. §§ 1.162-7 through 1.162-9 (1998), there is not a scintilla of competent evidence in the record that Sierra Testing intended the diverted funds to be treated as compensation or bonuses to Spencer. Spencer's post hoc self-serving characterization of the diverted funds is not adequate to support a compensation/bonus theory. See Preslar v. Commissioner, 167 F.3d 1323, 1330 (10th Cir. 1999) (citing Philhall Corp. v. United States, 546 F.2d 210, 215 (6th Cir. 1976) ("[T]he testimony of [a] taxpayer as to intent, standing alone and unsupported by objective facts, [is] insufficient as a matter of law.")).

*Embezzlement deduction*. Spencer alternatively claims the diverted funds could have been deducted by Sierra Testing as an embezzlement loss. See 26 U.S.C. § 165(e); 26 C.F.R. § 1.165-8(d) (1998). No such theft deduction may be taken when the embezzled proceeds were never reported as income in the first place. See United States v. Kleifgen, 557 F.2d 1293, 1299 (9th Cir. 1977); Alsop

v. Commissioner , 290 F.2d 726, 729 (2d Cir. 1961); Stahl Specialty Co. v. United States , 551 F.Supp. 1237, 1238 (W.D. Mo. 1982). The government is correct that Spencer's position makes a mockery of both the Internal Revenue laws and the sentencing guidelines. He attempts to absolve himself of responsibility for his embezzlement by suggesting the corporation (his victim) could have written off the loss on its tax return. We will not embrace such a theory.

The judgment of the district court is AFFIRMED.