PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JAMES DOMINIC DELFINO,
　　　　　　　*Defendant-Appellant.*

No. 06-4506

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JEANIENE ANN DELFINO,
　　　　　　　*Defendant-Appellant.*

No. 06-4507

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(3:05-cr-00202-REP)

Argued: November 2, 2007

Decided: December 18, 2007

Before TRAXLER, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Shedd wrote the opinion, in which Judge Traxler and Judge Duncan joined.

**COUNSEL**

**ARGUED:** William Mallory Kent, Jacksonville, Florida, for Appellants. Gregory Victor Davis, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia; Alan Hechtkopf, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

SHEDD, Circuit Judge:

James and Jeaniene Delfino appeal their convictions for tax evasion, mail fraud, and conspiracy to defraud the United States, alleging trial and sentencing errors. Finding no error, we affirm.

I

A grand jury returned a four-count superseding indictment charging the Delfinos with one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371; two counts of attempted evasion of payment of income tax in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2; and one count of mail fraud in violation of 18 U.S.C. § 1341. The case was tried to a jury.

At trial, the evidence tended to show that during the 1990s and 2000s, the Delfinos owned and operated several computer consulting firms which generated their personal income. However, for the years 1993 through 2004, the Delfinos did not file income tax returns. Instead, the Delfinos established several trusts in which they placed their incomes. These trusts likewise failed to file income tax returns or pay income taxes, and the Government alleged that the trusts were formed for the purpose of avoiding the payment of income taxes.

In 1997, the Internal Revenue Service ("IRS") began an audit of the Delfinos and their trusts, but the Delfinos refused to cooperate. As a result, the IRS calculated the Delfinos' income from bank records and

prepared the Delfinos' tax returns for the years they had failed to do so. The IRS then assessed tax on the Delfinos' total income for those years without allowing any deductions which they could have claimed. This assessment formed the basis for the tax evasion and the conspiracy-to-defraud counts against the Delfinos.

The Delfinos sought to prove that they had relied in good faith on the advice of Royce McCarley, a trust promoter and self-described tax consultant. The Delfinos presented evidence that McCarley advised them how to structure their trusts, that their trusts could be used to shift liability for income taxes, and that the use of these trusts was legal. Based on this testimony, the district court instructed the jury that it could consider the Delfinos' good-faith defense.

The jury found the Delfinos guilty on all counts. At sentencing, the Delfinos argued that the tax loss contained in the presentence report was erroneous because it did not credit them with the deductions which they could have claimed had they filed their tax returns. The district court rejected this argument and sentenced the Delfinos based on the tax loss calculated in the presentence report.

The Delfinos now appeal, arguing (1) the district court abused its discretion by refusing to admit testimony from six of McCarley's clients who participated in trust schemes similar to those at issue here; (2) there is insufficient evidence to sustain their mail fraud convictions; (3) venue was improper in the Eastern District of Virginia; and (4) the district court incorrectly calculated their tax loss. We consider each of these issues in turn.

II

The Delfinos first claim that the district court erred by excluding testimony from witnesses who would have testified regarding their participation in McCarley's schemes. The district court excluded this evidence because it found that certain of the witnesses did not participate in a scheme similar to that which the Delfinos claim to have participated in, thus rendering the testimony of those witnesses irrelevant. The district court excluded the remaining witnesses because it found (1) that good-faith reliance is a purely subjective defense and that the testimony of other participants in McCarley's

scheme was irrelevant to the Delfinos' own subjective good-faith beliefs and (2) that even if these witnesses were "marginally relevant" to the Delfinos' defense, their testimony would confuse the jury and constitute a waste of time because it would require a detailed discussion of each witness's participation in McCarley's schemes and therefore would essentially constitute a trial within a trial.

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005). A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law. *Id.*; *United States v. Williams*, 461 F.3d 441, 445 (4th Cir. 2006).

We hold that the district court acted within its discretion in excluding the participants in the McCarley scheme. A good-faith/reasonable reliance defense to tax evasion is provable based on a defendant's subjective beliefs. *Cheek v. United States*, 498 U.S. 192, 202 (1991). Accordingly, testimony from other participants in the McCarley scheme could be relevant, at most, to bolster the Delfinos' claim that they acted in good-faith reliance on McCarley's advice. Yet the witnesses proffered by the Delfinos were not parties to the same McCarley presentations as the Delfinos, and the Delfinos had no contemporaneous knowledge that these other participants had acted on McCarley's advice. This being the case, the proffered testimony is not directly relevant to McCarley's provision of the advice to the Delfinos and their reliance thereon. Therefore, the district court did not abuse its discretion by excluding the evidence.

III

The Delfinos next argue that the Government failed to present sufficient evidence to sustain their mail fraud conviction. Specifically, the Delfinos contend that the Government did not adduce evidence that they used an interstate commercial carrier. In reviewing the sufficiency of the evidence, our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support the conviction. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997). "[S]ubstantial evidence is evidence

that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

To obtain a conviction for mail fraud, the Government must prove (1) the existence of a scheme to defraud and (2) the use of the mails (or another interstate carrier) for the purpose of executing the scheme. *United States v. Loayza*, 107 F.3d 257, 260 (4th Cir. 1997). The second element may be satisfied when a defendant causes the mails to be used by doing "an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." *Pereira v. United States*, 347 U.S. 1, 8-9 (1954). Further, the use of the mails can be proven through evidence of business practice or office custom. *United States v. Scott*, 730 F.2d 143, 146-47 (4th Cir. 1984).

The Government contended that the Delfinos committed mail fraud when they received by mail a loan application from Countrywide Home Loans ("Countrywide") in Plano, Texas; fraudulently completed the application; and returned the same by commercial carrier to Countrywide. In support of its case, the Government called a Countrywide loan officer who testified that he had no direct knowledge of the receipt of the Delfinos' loan application and that he did not have direct knowledge as to whether it was received by mail or commercial carrier. However, he stated that Countrywide's normal business practice is to send the borrower a return United Parcel Service or Federal Express envelope, which the borrower then typically uses to return the application. He further testified that Countrywide likely has used other methods to transmit or receive loan application information including hand delivery or delivery by airplane or facsimile transmission.

We find this evidence sufficient to support the Delfinos' mail fraud conviction. The jury was entitled to believe and to rely on the testimony that Countrywide typically sends out a commercial carrier's return envelope, which the borrower typically uses to return the loan application. In relying on this testimony, the jury was entitled to conclude that the Delfinos likely returned their loan application by commercial carrier rather than the less likely, though possible, media of

airplane, personal delivery, or facsimile transmission. *United States v. Hannigan*, 27 F.3d 890, 892-93 (3d Cir. 1994) ("Once evidence concerning office custom of mailing is presented, the prosecution need not affirmatively disprove every conceivable alternative theory as to how the specific correspondence was delivered."). We therefore affirm the Delfinos' conviction for mail fraud.

IV

Finally, the Delfinos assert that the district court erred in calculating their tax loss for purposes of sentencing by not subtracting from the amount of the loss any deductions they could have claimed for the years in question but did not claim due to their failure to file returns. We review de novo the legal question of whether the tax loss includes deductions. *United States v. Moreland*, 437 F.3d 424, 433 (4th Cir. 2006).

The sentencing guidelines define "tax loss" as: "the total amount of loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)." U.S.S.G. § 2T1.1(c)(1). In arguing that the district court erred in its interpretation of this provision, the Delfinos rely on *United States v. Schmidt*, 935 F.2d 1440 (4th Cir. 1991), where we held that it was error to disallow deductions a defendant could have taken under U.S.S.G. § 2T1.3(a) (1989), the then-applicable guideline for conspiracy to impair, impede, or defeat tax defined tax loss. We concluded that "a fair reading of § 2T1.3(a) supports . . . punishing a crime whose gravity is represented by the *actual* loss of tax revenue to the IRS." 935 F.2d at 1451 (emphasis added).

We believe we can no longer rely on *Schmidt's* interpretation of "tax loss" under the sentencing guidelines. When we decided *Schmidt*, the guidelines defined tax loss as "the greater of: (A) the total amount of tax that the taxpayer evaded or attempted to evade; and (B) the 'tax loss' defined in § 2T1.3." U.S.S.G. § 2T1.1(a) (1989). Section 2T1.3, in turn, defined tax loss as "28% of the amount by which the greater of gross income and taxable income was understated, plus 100% of the total amount of any false credits claimed." U.S.S.G. § 2T1.3(a) (1989). However, the Sentencing Commission amended the guidelines in 1993 by replacing the definition of "tax loss" on which we

relied in *Schmidt* with the current definition found in § 2T1.1(c)(1). The current guideline refers to the "total amount of the loss that was the object of the offense (*i.e.*, the loss that would have resulted had the offense been successfully completed)" rather than "the total amount of the tax that the taxpayer evaded or attempted to evade." The Sentencing Commission explained that it adopted this amendment so that a uniform definition of tax loss would "eliminate[ ] the anomaly of using actual tax loss in some cases and an amount that differs from actual tax loss in others." U.S.S.G. App. C, Amend. 491 (1993). By altering the language which *Schmidt* interpreted and on which it rested, this change in the sentencing guidelines supersedes our holding in *Schmidt*.

With *Schmidt* no longer binding on this point, we conclude that the phrase "object of the offense" means "the *attempted*, or *intended* loss, rather than the *actual* loss to the [G]overnment." *United States v. Chavin*, 316 F.3d 666, 677 (7th Cir. 2002) (emphasis in original). In other words, "the object of the offense" means the loss that would have resulted had a defendant been successful in his scheme to evade payment of tax. Thus, if the Delfinos' scheme had succeeded, the Government would have been deprived of the tax on the amount by which they underreported (or failed to report) their taxable income. This unpaid tax represents the intended loss to the Government. It was this amount which the district court properly used to calculate the tax loss for purposes of sentencing.

The Delfinos next look to U.S.S.G. § 2T1.1(c)(2)(A) for relief.[1] Section 2T1.1(c)(2)(A) provides:

> If the offense involved failure to file a tax return, the tax loss shall be treated as equal to 20% of the gross income . . .

---

[1] The Government asserts that the Delfinos' reliance on § 2T1.1(c)(2)(A) is misplaced because the Delfinos were sentenced under § 2T1.1(c)(1) (tax evasion) rather than § 2T1.1(c)(2)(A) (failure to file a tax return). While that the Delfinos were, indeed, convicted of tax evasion, § 2T1.1(c)(2)(A) at least arguably applies because the Delfinos' conduct did include "failure to file a tax return." We therefore consider the Delfinos' argument that § 2T1.1(c)(2)(A) entitles them to resentencing.

less any tax withheld or otherwise paid, unless a more accu-
rate determination of the tax loss can be made.

The Delfinos claim that the phrase "a more accurate determination of
the tax loss" mandates the calculation of deductions before tax loss
is determined. The three courts of appeals which have considered this
issue have split, with a majority rejecting the position advanced by the
Delfinos. *Compare Chavin*, 316 F.3d at 679 (rejecting the inclusion
of deductions) *and United States v. Spencer*, 178 F.3d 1365, 1368
(10th Cir. 1999) (same) *with United States v. Gordon*, 291 F.3d 181,
187 (2d Cir. 2002) (concluding that § 2T1.1(c)(1)(A) requires the cal-
culation of deductions). We agree with and adopt the majority view.

In *Spencer*, the Tenth Circuit stated:

The sentencing guidelines simply authorize a court to avoid
the presumptive tax *rates* if a "more accurate determination
of the tax loss can be made." We do not interpret this provi-
sion as giving taxpayers a second opportunity to claim
deductions after having been convicted of tax fraud. It must
be remembered that, in tax loss calculations under the sen-
tencing guidelines, we are not computing an individual's tax
liability as is done in a traditional audit. Rather, we are
merely assessing the tax loss resulting from the manner in
which the defendant chose to complete his income tax
returns.

178 F.3d at 1368 (emphasis added) (internal citations omitted). We
find this reasoning persuasive. The Delfinos chose not to file their
income tax returns. They also chose not to cooperate with the initial
IRS audit, at which time they could have claimed deductions to which
they were entitled. By doing so, they forfeited the opportunity to
claim these deductions. Were the district court now to attempt to
reconstruct the Delfinos' income tax returns *post hoc*, it would be
forced to speculate as to what deductions they would have claimed
and what deductions would have been allowed. This would place the
court in a position of considering the many "hypothetical ways" that
the Delfinos could have completed their tax returns. *Chavin*, 316 F.3d
at 678. The law simply does not require the district court to engage
in this speculation, nor does it entitle the Delfinos to the benefit of

deductions they might have claimed now that they stand convicted of tax evasion.

V

Based on the foregoing, we affirm the Delfinos' convictions and sentences.[2]

*AFFIRMED*

---

[2]The Delfinos also contend that the Government failed to establish venue in the Eastern District of Virginia. Because the Delfinos' improper venue claim was raised in their post-trial motion for judgment of acquittal and/or new trial, we conclude that it was untimely and that the claim is waived. *See United States v. Ebersole*, 411 F.3d 517, 528 (4th Cir. 2005); *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004).