# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3298

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Leon Travis Blevins, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 13, 2008
Filed: September 16, 2008

_____

Before LOKEN, Chief Judge, BYE and COLLOTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Tax preparer Leon Travis Blevins prepared and filed twenty federal income tax returns for seven taxpayers that falsely claimed Schedule C business losses, Schedule E rental losses, and Form 4797 losses from the sale of business property for the 1999-2002 tax years. At least six of the taxpayers were investors in a foundering business run by Blevins that bought and sold home mortgages and engaged in other real estate activities. Some returns falsely claimed the business's ordinary losses as if they were incurred by the investor-taxpayers. Other claimed losses were wholly fictitious. Blevins pleaded guilty to twenty counts of aiding in the preparation and filing of false tax returns in violation of 26 U.S.C. § 7206(2). He appeals his twenty-one month

sentence, arguing that the district court[1] erred in determining tax loss under U.S.S.G. § 2T1.1 because the court failed to take into account the tax effect of investment losses to which his taxpayer clients were entitled. The court released Blevins on his personal recognizance pending resolution of the appeal. Reviewing the district court's interpretation of the Sentencing Guidelines *de novo*, we affirm. See United States v. Vickers, 528 F.3d 1116, 1120 (8th Cir. 2008) (standard of review).

For sentencing purposes, the Guidelines provide that the base offense level for the offense of filing fraudulent tax returns is the tax loss level from § 2T4.1, or six if there is no tax loss. U.S.S.G. § 2T1.1(a). Tax loss is "the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)." § 2T1.1(c)(1). Notes (A)-(C) to § 2T1.1(c)(1) provide that tax loss equals 28% of the underreported income and improperly claimed deductions (34% if the taxpayer is a corporation), plus 100% of any falsely claimed tax credits, "unless a more accurate determination of the tax loss can be made."

At sentencing, the government argued that the tax loss attributable to Blevins's offense conduct was $100,029, the aggregate amount of underpaid income tax determined by an IRS examination of each fraudulent return.[2] This level of loss produced a base offense level of sixteen, see U.S.S.G. § 2T4.1(F), and an advisory guidelines range of 21-27 months in prison. Blevins countered with a letter report from his tax and business valuation expert. Using investment data from the fraud investigation, the expert opined that each taxpayer's investment in Blevins's failed

---

[1]The HONORABLE RICHARD E. DORR, United States District Judge for the Western District of Missouri.

[2]Application of the 28% default rule in the notes to § 2T1.1(c)(1) would have produced a tax loss of $164,326. However, the IRS calculated its losses based on the investor-taxpayers' marginal tax rates, which were less than 28%. The government proposed the lower figure as reflecting a "more accurate determination," as the notes to § 2T1.1(c)(1) envision.

business was "a total loss" and that these losses "appear to be capital losses." Based on the assumption that each investor would use these losses to offset $3,000 of ordinary income each year until the losses were exhausted, the expert calculated that the investors were entitled to capital loss deductions totaling $32,177, "resulting in a net tax loss to the government of $68,074."[3] This lower level of tax loss would produce a base offense level of fourteen, see § 2T4.1(E), resulting in an advisory guidelines sentencing range of 15-21 months in prison.

Relying on the expert's calculations and on the Second Circuit's decision in United States v. Gordon, 291 F.3d 181, 187 (2d Cir. 2002), cert. denied, 537 U.S. 1114 (2003), Blevins argued to the district court, as he does on appeal, that the determination of tax loss under § 2T1.1(c)(1) must take into account the legitimate, unclaimed capital loss deductions to which his taxpayer clients are entitled on account of their worthless investments. The government disagreed, urging the court instead to follow decisions in other circuits concluding that the definition of tax loss in § 2T1.1(c)(1) -- "total amount of loss that was the object of the offense" -- does not allow a sentencing court to take into account "other unrelated mistakes on the return such as unclaimed deductions." United States v. Chavin, 316 F.3d 666, 677 (7th Cir. 2002); accord United States v. Delfino, 510 F.3d 468, 472-73 (4th Cir. 2007), petition

---

[3]The expert's letter report relied on assumptions not supported by the record. First, the expert opined that capital loss treatment of the taxpayers' worthless investments "is consistent with IRC Section 165." But the record contains no evidence that the investments would qualify as "worthless securities" as defined in 26 U.S.C. § 165(g)(2). Then, having assumed the investments are worthless and qualify for capital loss deductions, she assumed that each investor-taxpayer would offset his or her loss against $3,000 of ordinary income in each tax year to which any unused portion of the losses could be carried forward under 26 U.S.C. § 1212(b). But an investor must apply such losses to any capital gains before offsetting up to $3,000 in ordinary income. See 26 U.S.C. § 1211(b). Nothing in the record supports the expert's assumption that the investors would have no capital gains in the tax years in question. Like the district court, we need not consider these failures of proof.

for cert. filed, 76 U.S.L.W. 3569 (Apr. 7, 2008); United States v. Phelps, 478 F.3d 680, 681-82 (5th Cir. 2007), cert. denied , 128 S. Ct. 436 (2007); United States v. Spencer, 178 F.3d 1365, 1368-69 (10th Cir. 1999). The district court agreed with the government.

On appeal, the parties again frame the issue as turning on a conflict between other circuits on the broad question of whether a taxpayer's "unclaimed" deductions or losses may ever be taken into account in determining tax loss for purposes of § 2T1.1(c)(1). The apparent conflict developed after § 2T1.1 was amended in 1993. The prior version defined "tax loss" as "the greater of (1) the total amount of tax that the taxpayer evaded or attempted to evade or (2) 28% of the amount by which the greater of gross income and taxable income was understated;" a comment explained that alternative (2) "should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim." U.S.S.G. § 2T1.1 & cmt. n.4 (1992). The 1993 amendment deleted this comment, leading the Second Circuit to suggest in dicta that § 2T1.1 no longer precluded using legitimate unclaimed deductions to offset a tax loss. United States v. Martinez-Rios, 143 F.3d 662, 670-71 (2d Cir. 1998). The Seventh Circuit disagreed, concluding that the comment was deleted "because the new tax-loss definition specifically excludes consideration of unclaimed deductions on its face by defining tax loss as the 'object of the offense.'" Chavin, 316 F.3d at 678. Three other circuits have agreed with the Seventh.

In Gordon, defendant was convicted of tax evasion for failing to report income he received from a company he controlled. On appeal, he argued that the district court erred in refusing to reduce the tax loss resulting from this unreported income by the tax benefit the company would have received if it had treated the payments as a deductible salary expense. Adopting the reasoning of Martinez-Rios, the Second Circuit agreed in principle but concluded that the error was harmless because Gordon failed to prove that the company would have treated the income he received as a salary expense, as opposed to non-deductible dividends. 291 F.3d at 187.

-4-

The theory argued but not proved in <u>Gordon</u> presents the strongest case for allowing unclaimed tax benefits to reduce the government's tax loss because the unclaimed deduction in that case was a tax consequence of the fraud. Taking this type of offsetting tax benefit into account at least arguably comports with the plain language of § 2T1.1(c)(1) -- "the loss that would have resulted had the offense been successfully completed." On the other hand, the defendant's failure to claim the offsetting tax benefit in <u>Gordon</u> by taking a corporate salary expense deduction for payments he intended not to report as income helped conceal the fraud. No doubt reflecting this aspect of the issue, the four circuits that have rejected the Second Circuit's reasoning explicitly refuse to interpret § 2T1.1(c)(1) "as giving taxpayers a second opportunity to claim deductions after having been convicted of tax fraud." <u>Spencer</u>, 178 F.3d at 1368, quoted in <u>Chavin</u>, 316 F.3d at 679, in <u>Phelps</u>, 478 F.3d at 682, and in <u>Delfino</u>, 510 F.3d at 473.

In this case, we need not decide whether an unclaimed tax benefit may *ever* offset tax loss determined by aggregating the offense conduct of underreported income, improper deductions, and false tax credits. First, <u>Gordon</u> is clearly distinguishable. Here, the investors' offsetting capital losses that Blevins is claiming are unrelated to the tax fraud he committed. The Schedule C and Schedule E losses that Blevins had his clients fraudulently claim were ordinary business losses. Such losses presuppose an on-going business, however distressed, not a failed business that has become a worthless investment. Thus, the fraudulently claimed losses were neither related to nor in lieu of worthless investment losses. Indeed, the worthless investment losses were tax benefits that the investors could claim whether or not the fraud was perpetrated. Taking into account unclaimed tax benefits wholly unrelated to the offense of conviction is contrary to the plain meaning of the definition of tax loss in § 2T1.1(c)(1), "the total amount of loss that was the object of the offense (<u>i.e.</u>, the loss that would have resulted had the offense been successfully completed)."

Second, the unclaimed capital losses in this case are tax benefits available to the investor-taxpayers, not to Blevins.  So far as this record reveals, those capital losses have not been claimed and remain potentially available to the taxpayers in the future (if they have not already been claimed).  Thus, Blevins's fraud did not result in any offsetting tax benefit to the government.  Indeed, should the investors properly claim and be entitled to worthless investment capital losses on future returns (or amended past returns), the government will incur a loss of tax revenue *in addition to* the loss that was the object of Blevins's offense.  In these circumstances, the district court properly declined to reduce the government's tax loss from the fraud by the taxpayers' allegedly unclaimed capital loss deductions.

The judgment of the district court is affirmed.

_____