**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 23-4633**

———————————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JOSHUA O'KEITH BELCHER,

Defendant – Appellant.

———————————

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Michael F. Urbanski, Senior District Judge.  (4:19-cr-00025-MFU-1)

———————————

Argued:  September 26, 2024                    Decided:  February 19, 2025

———————————

Before DIAZ, Chief Judge, RUSHING, Circuit Judge, and KEENAN, Senior Circuit Judge.

———————————

Affirmed by unpublished opinion.  Judge Rushing wrote the opinion, in which Chief Judge Diaz and Senior Judge Keenan joined.

———————————

**ARGUED:** Erin Margaret Trodden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jonathan Patrick Jones, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** Mary Maguire, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Christopher R. Kavanaugh, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for

Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

A jury convicted Joshua Belcher of illegally possessing a firearm as a felon. Belcher appeals his conviction, challenging two evidentiary rulings and the district court's refusal to give one jury instruction Belcher requested. Finding no reversible error, we affirm.

I.

In April 2019, Officer Jayme Clark stopped Belcher for driving a truck with a broken taillight. Officer Clark's body camera and dashboard camera recorded the incident. At the truck, Officer Clark smelled marijuana and asked to search the vehicle. Belcher consented. Upon searching, Officer Clark discovered a stolen pistol under the truck's bench seat. Belcher was arrested.

The truck was registered to Belcher's father, Roy Lynwood Hairston, Jr. Instead of towing the truck, Officer Clark allowed Belcher to call Hairston so he could retrieve it. When Hairston arrived, Officer Clark told him Belcher wanted to talk to him, but Hairston declined to speak with his son.

Officer Clark then took Belcher to the police station and questioned him about the gun. Explaining the potential charges, Officer Clark urged Belcher to reveal where he obtained the gun if he didn't steal it. Belcher responded that there was a "dilemma" in answering those questions. J.A. 806, at 4:30–4:45. Eventually, however, Belcher confessed to buying the gun, saying: "Yeah, but I don't even know who the person was I got it from. That's why I said you wouldn't even believe it; if I tell you, you won't believe it." J.A. 806, at 5:17–5:27.

3

Belcher was indicted for possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1). At trial in July 2022, the jury found Belcher guilty. The district court sentenced him to forty-eight months in prison.

II.

On appeal, Belcher first challenges the exclusion of proffered defense evidence. At trial, Belcher sought to introduce a certified copy of his father's 1980 felony conviction. According to Belcher, this evidence would support a defense theory that the gun belonged to his father, who was not legally allowed to possess it, and that Belcher falsely confessed to protect his father from being criminally charged as a felon in possession of a firearm. Belcher further argued that the prior conviction explained Hairston's reluctance to talk to Belcher when he retrieved the truck and "why [Hairston] has never come forward in the interim to say that the gun was his." J.A. 530.

The district court reasoned that Hairston's prior conviction was irrelevant absent evidence Belcher knew about it and evidence Hairston's right to possess a firearm had not been restored. *See* Fed. R. Evid. 401, 104(b). Belcher did not provide such evidence, so the court excluded the conviction records.

After the verdict, Belcher moved for a new trial on the ground that Hairston's conviction was relevant and its exclusion inhibited Belcher's ability to present a complete defense. The district court disagreed. As the court explained, even without a prior felony conviction, "it was illegal for Hairston to knowingly receive a stolen firearm, and the defense was able to argue that Hairston's possession of the firearm explained both Belcher's and Hairston's conduct." *United States v. Belcher*, No. 4:19-CR-25, 2023 WL

4

1423754, at *6 (W.D. Va. Jan. 30, 2023). In particular, Belcher had the opportunity to argue—and did argue—to the jury that he falsely confessed because he was concerned his father may have stolen the gun and that Hairston's unlawful possession of the gun motivated his conduct when he retrieved the truck. In reaching its verdict, however, "the jury necessarily rejected Belcher's theory that Hairston owned the gun." *Id.* "Under these circumstances," the district court reasoned, its decision to exclude Hairston's court records "could not have affected the jury's verdict." *Id.*

We review the district court's decision to exclude evidence for abuse of discretion. *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007). Yet, evidentiary rulings are subject to harmless error review, so even if the ruling was in error, we will "leav[e] the judgment intact where we are able to conclude, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Garcia-Lagunas*, 835 F.3d 479, 492 (4th Cir. 2016) (internal quotation marks omitted).

Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. As we have often observed, "relevance typically presents a low bar to admissibility." *United States v. Hart*, 91 F.4th 732, 742 (4th Cir. 2024) (internal quotation marks omitted). Belcher persuasively argues that Hairston's conviction was relevant to his defense because it could explain why Hairston did not claim the gun or testify on Belcher's behalf. That remains so even if Belcher was unaware of his father's 1980 conviction and even if Belcher did not produce evidence proving the negative that Hairston's firearm rights had not been restored.

5

But even assuming the district court abused its discretion by excluding Hairston's conviction records, any error was harmless.

As the district court correctly explained when denying Belcher's motion for a new trial, even without evidence of Hairston's prior conviction, Belcher was able to argue to the jury that Hairston's conduct and Belcher's confession were explained by the fact that the gun belonged to Hairston and possessing it was illegal—not because Hairston was a felon, but because the gun was stolen. The defense made this exact argument during closing. By convicting Belcher, the jury rejected his assertion that he lied about owning the gun to protect his father from being charged with possessing a stolen firearm. It stands to reason that the jury would not be swayed by the additional argument that Belcher was (perhaps unknowingly) protecting Hairston from being charged with possessing a firearm as a felon. We therefore conclude any error in excluding this evidence was harmless.

### III.

Next, Belcher contends the district court erred in excluding certain cross-examination evidence. Before trial, the Government disclosed information to the defense regarding Officer Clark. *See Giglio v. United States*, 405 U.S. 150, 154–155 (1972). Specifically, the Government produced body camera footage of an April 2020 traffic stop in which Officer Clark used his stun gun against a man for allegedly resisting arrest. Records produced with the footage showed that Officer Clark was disciplined for this incident and transferred to the police department's animal control unit.

The Government moved pretrial to exclude the video and disciplinary records, arguing they were irrelevant, unfairly prejudicial, and improper character evidence. *See*

6

Fed. R. Evid. 402, 403, 404(b), 608(b). Belcher disagreed, arguing the evidence showed Clark's bias, untruthfulness, motive or intent, and "modus operandi" in "interacting with young black men." J.A. 92. The district court granted the Government's motion, excluding evidence related to the 2020 traffic stop but allowing Belcher to cross-examine Officer Clark about his transfer from patrol officer to animal control and his ambition to be promoted outside that unit.

In a written opinion, the court examined the criteria for admitting evidence of a witness's character or other acts under Federal Rules of Evidence 404, 608, 402, and 403. The court reasoned that evidence about the April 2020 traffic stop was "not relevant to any issue in Belcher's prosecution." J.A. 193 (citing *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)). The stop was a year after Belcher's, and "the two episodes could not be more different." J.A. 194. "The Belcher traffic stop involved a defective tail light, the odor of marijuana, and the discovery of a stolen handgun in which the parties remained calm throughout, while the [2020] stop concerned a violent, physical encounter during which Clark discharged an electrical stun device." J.A. 194.

Having reviewed the video and disciplinary records, the court also concluded that the 2020 incident and disciplinary investigation did not "bear[] upon or relate[] to Clark's character for truthfulness," nor did they "suggest any propensity of Clark's to falsify his testimony or indicate a lack of candor." J.A. 195–196. The court further determined that the evidence was unfairly prejudicial, as it "undoubtedly" would "inflame the jury and confuse and mislead them as to the issues material to the criminal prosecution of Belcher." J.A. 197; *see also* J.A. 193 (finding any probative value "'substantially outweighed by

7

confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process'" (quoting *Queen*, 132 F.3d at 997)).  Finally, the court found Belcher's argument—that the video and disciplinary records were "evidence of bias by Clark" providing him "with a motive to plant evidence and testify falsely at the trial of this case"—"entirely speculative" and "belied by the relevant body camera video of the April 20, 2019, traffic stop involving Belcher."  J.A. 197.

Reviewing for abuse of discretion, *see Delfino*, 510 F.3d at 470, we find none.  The district court carefully considered the relevant criteria for admission under Rules 404 and 608, and Belcher has identified no factual or legal error in the court's analysis.  Nor did the court transgress its "wide discretion . . . to determine admissibility under Rule 403." *United States v. Miller*, 61 F.4th 426, 430 (4th Cir. 2023) (internal quotation marks omitted).  Finally, as the district court rightly observed, the jury could fully assess Officer Clark's actions in arresting Belcher by viewing the body camera and dashboard camera footage from Belcher's own traffic stop.

## IV.

Lastly, Belcher argues the district court erred by not instructing the jury about his "theory of defense."  Specifically, Belcher proposed the following instruction: "Mr. Belcher's defense is that he did not 'knowingly' possess any weapon, and that the government has not proven beyond a reasonable doubt that Mr. Belcher knew any weapon was in his father's truck."  J.A. 439.

"We review the district court's decision to give or deny a proposed jury instruction for abuse of discretion." *United States v. Hicks*, 64 F.4th 546, 556 (4th Cir. 2023).  "When

8

a trial court has rejected a proposed instruction, we will reverse only if that instruction '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense.'" *United States v. Lespier*, 725 F.3d 437, 449 (4th Cir. 2013) (quoting *United States v. Passaro*, 577 F.3d 207, 221 (4th Cir. 2009)).

The district court did not abuse its discretion. As the court correctly explained, its charge to the jury adequately covered the relevant concepts, including knowledge, reasonable doubt, and the Government's obligation to prove all the elements of the crime. Denial of the requested instruction did not impair Belcher's ability to present his theory of defense to the jury.

\*   \*   \*

The district court's judgment is

*AFFIRMED.*