Vacated and remanded by-unpublished opinion. Judge Gregory wrote the opinion, in which Judge Wynn joined except as to Part II.B. Judge Wynn wrote a separate opinion concurring in result only as to Part II.B. Chief Judge Traxler wrote an opinion concurring in part and dissenting in part.
Unpublished opinions are not binding precedent in this circuit.
GREGORY, Circuit Judge:
In this case, appellant Harold Pitt challenges his convictions for mail fraud in connection with a real estate sale on grounds that the district court improperly denied his motion for judgment of acquittal and that the jury instructions were improper under Skilling v. United States, — U.S. —, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010). Finding that that the jury instructions were plainly erroneous, we vacate his convictions.
I.
Harold Pitt was the chairman of the board of the Housing Authority of Winston-Salem (“HAWS”), a public body created by the North Carolina legislature as a municipal corporation. HAWS’s purpose is to provide public housing for the Winston-Salem area. The members of the board are appointed by the mayor of Winston-Salem, and the board then elects its chairman. The board’s role is very similar to that of a board of directors of a corporation: each member takes an oath of office administered by the mayor and is a fiduciary of HAWS. The members also serve as members of the board of Forsyth Economic Venture (“FEV”), a non-profit organization that is owned and controlled by HAWS. North Carolina state law prohibits housing authority commissioners from acquiring an interest in a housing project or property planned to be included in any project. N.C. Gen.Stat. § 157-7. The statute also provides a duty to disclose any conflict of interest. Id. HAWS receives the majority of its funding from the U.S. Department of Housing and Urban Development (“HUD”).
Pitt and his business partner Thomas Trollinger formed a limited liability partnership known as East Pointe Developers (“EPD”). EPD purchased a 41-lot subdivision known as Lansing Ridge and built low-income housing on 18 of those lots, leaving 23 undeveloped. Eventually, EPD sold the undeveloped lots to another entity, Wolfe Investment (“Wolfe”), for $358,000. Two hundred forty-nine thousand dollars was borrowed from a trust fund, secured by a first deed of trust. EPD provided the remaining $183,000, *789 taking a second deed of trust in that amount. Wolfe, however, failed to develop Lansing Ridge. Pitt informed Wolfe that HAWS might be interested in purchasing the property and advised Wolfe not to sell to anyone else before HAWS made a Around the same time, the HAWS board met and Pitt, without disclosing EPD’s interest in Lansing Ridge, moved to authorize the executive director of HAWS to enter into negotiations to purchase the property to develop low-income housing. The board approved the resolution.
A foreclosure proceeding was brought by the trust fund holding the first deed of trust. Foreclosure on the first deed would have extinguished the second deed held by EPD. Pitt, Trollinger, and EPD’s attorney, Andrew Hart, met to discuss the situation. They agreed that Trollinger would Lansing Ridge at the foreclosure sale and then sell the property to HAWS. Trollinger, as the only bidder, successfully bid $285,100. He later assigned his bid to EPD, ostensibly to avoid capital gains tax. Afterward, EPD borrowed $220,000 from Branch Bank and Trust (“BB & T”) to pay for the purchase; Pitt and Trollinger also individually contributed personal funds&emdash; $29,050 and $14,795 respectively.
EPD then sold Lansing Ridge to FEV, the wholly owned subsidiary of HAWS, for $414,000. At the closing, Trollinger was given a check for $413,172, made payable to EPD. Pitt took the check from and deposited it in EPD’s account at BB & T. The proceeds were used to pay off EPD’s loan to purchase Lansing Ridge; Pitt and Trollinger then distributed the remainder to themselves, $84,000 to each.
HAWS’s board was not aware of the purchase of Lansing Ridge, nor did it seek approval from HUD prior to the sale, as is custom. HAWS did eventually submit an acquisition package to HUD, but HUD denied the acquisition request on two inde-pendent grounds: the land was not suit-able for development,[1] and HUD discover-ed that Pitt had a conflict of interest. HUD’s denial barred the use of federal funds to develop the property. After Pitt’s conflict of interest was discovered, he resigned as chairman of the board. As a result of the lack of HUD funding, HAWS had to use non-federal develop-ment fees to retire its debt.
Pitt was indicted on one count of wire fraud, four counts of financial transactions in a criminally deprived property, and two counts of mail fraud in violation of 18 U.S.C. §§ 1341 & 1346. He was tried on all counts but found guilty only of the two counts of mail fraud. The jury did not reach a verdict on the remaining counts.
II.
Pitt challenges his conviction on two grounds. He contends that the district court improperly denied his Rule 29 mo-tion for a judgment of acquittal and that the jury instructions were in error under the Supreme Court’s recent decision in Skilling v. United States. We address each claim of error in turn.
A.
Pitt first alleges that there was insufficient evidence for the jury to have convicted him of mail fraud. We disagree.
*790 When an appellate court reviews the denial of a motion for judgment of acquittal, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972)). There are two elements of mail fraud: “(1) the existence of a scheme to defraud [money or property or honest services][2] and (2) the use of the mails ... for the purpose of executing the scheme.” United States v. Delfino, 510 F.3d 468, 471 (4th Cir.2007). To establish the first element, the Government “must prove that the defendants acted with the specific intent to defraud, which may be inferred from the totality of the circumstances and need not be proven by direct evidence.” United States v. Godwin, 272 F.3d 659 (4th Cir.2001) (citations omitted). Fraud includes “acts taken to conceal, create a false impression, mislead, or otherwise deceive in order to prevent the other [party] from acquiring material information.” United States v. Colton, 231 F.3d 890, 898 (4th Cir.2000) (citing Restatement (Second) of Torts § 550 (1977)). “Thus, fraudulent concealment — without any misrepresentation or duty to disclose — can constitute ... fraud.” Id. at 899.
Pitt first argues that the evidence was insufficient to prove that he concealed his conflict of interest. The evidence at trial, however, was sufficient for a reasonable jury to find otherwise. Prior to the sale, Pitt told another individual, Jeff Corbett, that he could not develop the Lansing Ridge property with federal funds because he had a conflict of interest. Moreover, North Carolina state law provides that “If any commissioner or employee of an authority owns or controls an interest ... in any property included or planned to be included in any housing project, he shall immediately disclose the same in writing to the authority and such disclosure shall be entered upon the minutes of the authority. N.C. Gen.Stat. § 157-7. Pitt, however, failed to comply with this obligation. Trollinger also testified that he and Pitt agreed that Trollinger would purchase the property in his own name, rather than EPD’s, to conceal Pitt’s conflict of interest.
Pitt next argues that there is insufficient evidence he had the requisite intent. But again, the evidence at trial was sufficient for a reasonable jury to find he had the intent to defraud HAWS of a pecuniary interest. When Wolfe was first contemplating selling off Lansing Ridge, Pitt spoke with Wolfe and suggested that HAWS might purchase the property; once the foreclosure action commenced, Pitt and Trollinger agreed that they would bid at the auction and then re-sell the property to HAWS, thereby making a substantial profit. Moreover, as discussed above, Pitt consummated the sale while concealing his conflict of interest. A reasonable jury could infer from these facts that Pitt intended to defraud HAWS of the Lansing Ridge purchase money.
As to the second element of mail fraud, Pitts does not challenge that he used the U.S. mails in connection with the land sale as to each of the counts of which he was convicted. We therefore reject Pitt’s ar *791 gument that insufficient evidence was presented at trial to convict him.
B.
Pitt goes on to suggest that the instructions given to the jury were erroneous under Skilling v. United States, — U.S. —, 130 S.Ct. 2896, 2931, 177 L.Ed.2d 619 (2010), and that he is entitled to a reversal of his conviction. We agree.
1.
In Skilling, the Supreme Court considered the constitutionality of 18 U.S.C. § 1346, which defines the term “scheme or artifice to defraud” to “include a scheme or artifice to deprive another of the intangible right of honest services.” 18 U.S.C. § 1346 (1988). In Skilling, the Court limited the reach of § 1346, holding that “honest services fraud” only covers bribery and kickback schemes. Skilling, 130 S.Ct. at 2931. Because the defendant in that case was convicted by a general verdict after the jury was instructed on alternative theories of guilt — one valid, and one invalid — the Court reversed the conviction. Id. at 2934 (citing Yates v. United States, 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957)) (“[A] verdict [must] be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.”).
Skilling is applicable to cases on direct appeal, Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and the district court did instruct the jury that it could convict on either a deprivation-of-property or an honest-services theory of fraud. When the district court instructed the jury on the honest-services theory, it did not include, as Skilling now requires, an instruction limiting application of that theory to bribery or kickback schemes. Moreover, the Government did not allege that Pitt accepted a side payment. Thus, as the Government concedes, there was error and, moreover, Pitt “did not commit honest services fraud.” Skilling, 130 S.Ct. at 2934.
2.
The mere fact that the jury instructions were erroneous, however, does not end the inquiry. If a defendant fails to object to an erroneous jury instruction at trial, Rule 52(b) would apply and this Court would review only for plain error. Fed.R.Crim.P. 52(b). We note first that Skilling was not handed down until long after Pitt’s trial — indeed, both parties filed their briefs in this Court months before Skilling was decided.[3] That is, Pitt had no way of knowing at trial that the proposed jury instructions were in fact contrary to law. However, the Supreme Court has held that Rule 52(b) applies even in cases where the relevant rule of law was not established until after trial. Johnson v. United States, 520 U.S. 461, 464-66, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). We must, therefore, apply plain error here. To demonstrate plain error, the appellant must show that (1) there was error, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings, or the defendant is actually innocent. United States v. Cedelle, 89 F.3d 181, 184 (4th Cir.1996) (citing United States v. Olano, 507 U.S. 725, 731-37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). With respect to Yates errors in particular, this Court has held that a defendant who fails to preserve his objection to a flawed instruction “must *792 demonstrate that the erroneous instruction given resulted in his conviction, not merely that it was impossible to tell under which [theory] the jury convicted.” United States v. Robinson, 627 F.3d 941, 954 (4th Cir.2010).
The first two Olano prongs are clearly satisfied. As the Government concedes, there was error: the district court improperly instructed the jury as to the honest services fraud count. Moreover, this error is plain: Skilling straightforwardly holds that such jury instructions are improper. That it was not plain at the time of trial is immaterial; the Supreme Court held in Johnson that “in a case ... where the law at the time of trial was settled and clearly contrary to the law at the time of appeal[,] it is enough that an error be ‘plain’ at the time of appellate consideration.” Johnson, 520 U.S. at 468, 117 S.Ct. 1544.
We further find that the error substantially affected Pitt’s rights. Generally, for an error to affect a defendant’s substantial rights, it “must have been prejudicial: It must have affected the outcome of the district court proceedings.” Olano, 507 U.S. at 734, 113 S.Ct. 1770. The defendant must “show a reasonable probability that, but for the error,” the outcome would be different. United States v. Dominguez Benitez, 542 U.S. 74, 76, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). Here there is every reason to believe that the outcome would have been different had the district court properly instructed the jury. From start to finish, the Government’s case revolved around honest services fraud. The theory of the prosecution’s case was that Pitt abused his position as the chairman of HAWS and deprived the public of his honest services by failing to disclose that he had a conflict of interest in the Lansing Ridge sale. In its closing, the Government argued, “The heart of this case is this idea of public duty. It’s called in the federal criminal statutes [sic] that the judge is going to instruct you on honest services, the duty of honest services.” J.A. 1260. It went on to say that it need not prove Pitt engaged in pecuniary fraud to get a conviction. E.g., J.A. 1262-63, 1281-82, 1313-14. The deprivation of honest services, the Government informed the jury, was all it needed to find Pitt guilty.
If instead, the official or employee acts or makes a decision based on a personal interest ..., the official or employee has violated the duty to provide honest services to the public even though the public agency involved may not suffer any loss ... The crime is the violation of the duty.
J.A. 1262.
Further, when the district court charged the jury, it spent a substantial amount of time explaining the now-invalid honest service theory. E.g., J.A. 1339-40. In contrast, the district court mentioned only once the still-valid pecuniary fraud theory. J.A. 1338.
While the Government correctly notes it argued at trial that Pitt received a monetary benefit from the Lansing Ridge sale, those allegations were wrapped up in the honest services theory of the case. The Government argued that, in order to receive a personal benefit, Pitt defrauded HAWS of its right to his honest services. E.g., J.A. 1263, 1264, 1267, 1269-70, 1285-86, 1314. The pecuniary interest, in other words, was offered primarily as a motive to engage in honest-services fraud rather than as an independent theory of guilt.
We also note the jury’s failure to convict Pitt on the additional counts on which he was indicted. Pitt was indicted and tried on several additional charges of wire fraud and money laundering — counts that involved financial transactions. Although these additional counts specifically involved the transfer of funds, the jury could not reach a verdict. This contrasts starkly *793 with other cases, cited by our fíne colleague in dissent, in which contemporaneous convictions on additional and related charges ameliorated the problem of the infirm honest services charge. For example, in United States v. Jefferson, 674 F.3d 332 (4th Cir.2012), this Court was also confronted with a Skilling problem in a jury charge, for conspiracy to commit honest services wire fraud. In that case, however, the jury also convicted the defendant of two substantive bribery offenses, and the circumstances surrounding the bribery offenses and the conspiracy were the same.
Our conclusion is buttressed by the fact that an honest-services theory and a pecuniary theory of mail fraud have different elements with respect to intent. As noted above, there are two elements of mail fraud: “(1) the existence of a scheme to defraud [money or property or honest services] and (2) the use of the mails ... for the purpose of executing the scheme.” Delfino, 510 F.3d at 468. To establish the first element, the Government “must prove that the defendants acted with the specific intent to defraud.... ” Godwin, 272 F.3d at 659 (citations omitted). Under an honest-services theory, the Government need only show the defendant had the intent to defraud another of the intangible right of honest services. United States v. Harvey, 532 F.3d 326, 333 (4th Cir.2008). In a pecuniary fraud theory, by contrast, the Government must prove the defendant intended to deprive another of a pecuniary interest. See United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390 (4th Cir.1993). As a result, an honest-service fraud conviction does not necessitate a pecuniary fraud conviction. Here, the fact that the jury found Pitt intended to defraud HAWS of its right to his honest services does not compel the conclusion that he also intended to deprive HAWS of a pecuniary interest.
Finally, we exercise our discretion to notice the error by finding that the erroneous jury instructions seriously affected the fairness, integrity, or public reputation of the judicial proceedings. In this case, the district court’s instructions to the jury were clearly erroneous. Had the jury been properly instructed, the outcome would not merely have been different, but Pitt likely would have been found not guilty of the charges brought against him. He instead was branded as a felon and is forced to endure “the official expression of society’s condemnation of his conduct.” United States v. Turner, 532 F.Supp. 913, 915 (N.D.Cal.1982). Moreover, as Skilling makes clear, any jury instruction that fails to properly limit the reach of honest services fraud to bribery or kickback schemes runs afoul of the Due Process Clause, depriving the defendant of his constitutional rights. See Skilling, 130 S.Ct. at 2927-35. If the Government remains convinced that Pitt is guilty, it can choose to retry him pursuant to a proper jury instruction. But to uphold the conviction in light of the facts presented here would be nothing less than a “miscarriage of justice.” Cedelle, 89 F.3d at 184.
Having found that the faulty jury instructions constituted plain error, we are compelled to vacate both of Pitt’s convictions. The two convictions rely on the same underlying scheme to defraud— EPD’s sale of the Lansing Ridge property to HAWS. The only difference between the two involves what documents Pitt caused to be sent through the U.S. mails: while Count Six alleges that it was “closing documents,” Count Seven asserts it was “loan documents regarding a loan between M & F Bank and FEV.” Because sending documents through the U.S. mails is not a federal crime unless it is done in the context of an underlying fraud, both convictions must be vacated.
*794 III.
While the district court did not err in denying the Appellant’s Rule 29 motion, we find that the jury instructions were plainly erroneous. We therefore vacate the Appellant’s convictions and remand to the district court for further proceedings.

VACATED AND REMANDED.

. While the dissent asserts that Lansing Ridge "was not well-suited for use as an development,” the evidence is decid-edly mixed on that question. One of the Government's own witnesses, Janet DeCreny, testified that apart from Pitt's conflict of the property was usable for Hope VI. J.A. 861. Several Government witnesses testified that while the land would need work before it was construction-ready, it could be used for a housing development project. J.A. 208 (testi-mony of Jeff Corbett); J.A. 831-35 (testimony of David MacPherson); J.A. 861-70 (testimo-ny of Janet DeCreny).

. While a defendant may be convicted under an honest services or pecuniary theory of fraud, here we evaluate the sufficiency-of-the-evidence claim under a pecuniary theory only: the Supreme Court’s recent decision in Skilling v. United States, — U.S. —, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010), requires proof of a bribery or kickback scheme to make out a case for honest services fraud, and there is no indication Pitt engaged in either.

. As a result, we ordered the parties to file supplemental briefs addressing the Skilling issue.