**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 22-4488**

─────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

BROCK BEEMAN,

        Defendant - Appellant.

─────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. M. Hannah Lauck, District Judge. (3:21-cr-00095-MHL-1)

─────────

Argued: January 31, 2025                Decided: April 18, 2025

─────────

Before KING, WYNN, and QUATTLEBAUM, Circuit Judges.

─────────

Affirmed by published opinion. Judge Quattlebaum wrote the opinion in which Judge King and Judge Wynn joined.

─────────

**ARGUED:** William Jeffrey Dinkin, WILLIAM J. DINKIN, PLC, Richmond, Virginia, for Appellant.  Avishek Panth, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Jessica D. Aber, United States Attorney, Angela Mastandrea-Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

─────────

QUATTLEBAUM, Circuit Judge:

After a two-day trial, a federal jury convicted Brock Beeman of mailing three threatening letters to a prosecutor and an investigator who were involved in an earlier criminal proceeding against him, in violation of 18 U.S.C. § 876(c). Beeman now appeals that conviction, challenging the district court's (1) admission of an uncharged threatening letter, (2) empaneling of an anonymous jury and (3) denial of his motion for a mistrial on account of the prosecutor's improper statement during closing argument.

We review all three of these challenges for abuse of discretion. Under that standard, we do not ask whether we would have made the same decision as the district court. We ask whether the district court acted arbitrarily or irrationally, failed to consider judicially recognized factors constraining its exercise of discretion, relied on erroneous factual or legal premises or committed an error of law. *See United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007). Applying that standard to Beeman's challenges, we affirm the district court's judgment.[1] The district court did not abuse its discretion in any of the rulings Beeman challenges on appeal.

I.

In an earlier case brought in the Norfolk division of the United States District Court for the Eastern District of Virginia, Beeman pled guilty to interstate communication with intent to injure to another person in violation of 18 U.S.C. § 875(c). *See United States v.*

---

[1] We have jurisdiction to review the final judgment of the district court pursuant to 28 U.S.C. § 1291.

2

*Beeman*, No. 22-4081, 2023 WL 4488261, at *1 (4th Cir. July 12, 2023). Matthew Heck, then a Special Assistant United States Attorney, prosecuted that case. Nichole Harris, a special agent with the Naval Criminal Investigative Service, served as an investigator.

On September 21, 2021, after Beeman pled guilty in the Norfolk case, a federal grand jury issued a three-count superseding indictment in the United States District Court for the Eastern District of Virginia in the Richmond division. The indictment charged Beeman with three counts of mailing threatening communications to a federal official in violation of 18 U.S.C. § 876(c) and 18 U.S.C. § 1114. Count one charged Beeman with mailing a letter to Heck on June 22, 2021, threatening to kill him; count two alleged that on September 8, 2021, Beeman emailed a threatening letter to Harris threatening to kill her; and count three alleged that on September 8, 2021, he mailed another letter to Heck threatening to kill him. All the letters relate to Heck's and Harris' involvement with the Norfolk case.

The Richmond division case proceeded to a jury trial. The government called several witnesses including Heck, Harris and a forensic handwriting and document analyst. Heck and Harris talked about receiving the letters and feeling threatened and concerned by them. They also testified that they were familiar with Beeman's handwriting due to their involvement with the Norfolk case and that they attributed the letters' handwriting to Beeman. The forensic expert confirmed this. Beeman did not present any evidence, but he did question the government's evidence linking the letters to him.

The jury found Beeman guilty on each of the three counts of the superseding indictment. After sentencing, the district court entered its final judgment. This appeal followed.

## II.

First, Beeman argues that the district court improperly admitted a fourth threatening letter—this one uncharged—from Beeman to the same investigator, Harris. That letter was intercepted and was ultimately not received by the investigator. The government, however, moved to admit it into evidence as *res gestae* and under Federal Rule of Evidence 404(b). It maintained that the letter—dated several months after the charged letters—provided context for Beeman's animus toward the investigator, as well as his motivation and intent to threaten the investigator in the charged letters. And the letter, according to the government, was reliable and probative because it shared common features with the charged letters. Beeman objected to the letter's admission into evidence. He argued that the letter—which contained threats to kill the investigator and others associated with the Norfolk case and to blow up the courthouse, other federal buildings and the state of Virginia—was unfairly prejudicial to him. According to Beeman, the letter had no meaningful probative value since the government did not charge him with any violation for sending it and it had the strong potential to unfairly inflame the jury.

The district court granted the government's motion to admit the fourth letter as *res gestae* evidence and, alternatively, under Rule 404(b). We review the district court's

4

admission of this evidence for abuse of discretion. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

Federal Rule of Evidence 404(b) governs most character-based evidence in federal court. That rule prohibits evidence of a defendant's crimes, wrongs or acts—other than those for which he is charged— "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). The purpose of this rule should be apparent. To convict a criminal defendant, the government must present evidence that the defendant committed the actual charged offense. It is not enough to introduce evidence of unrelated bad conduct and suggest—or hope—the jury believes the defendant must have committed the charged offense because he has done other bad things. *See Queen*, 132 F.3d at 995 ("The principal danger that Rule 404(b) targets is addressed by the language of the rule itself—that defendants not be convicted simply for possessing bad character."). But "not all prior 'bad act' evidence is encompassed by Rule 404(b)." *United States v. McBride*, 676 F.3d 385, 396 (4th Cir. 2012). The rule applies only when the challenged conduct is extrinsic to the charged offense, not when it is intrinsic. *See United States v. Brizuela*, 962 F.3d 784, 793 (4th Cir. 2020). Rule 404(b) does not prohibit evidence of conduct that is intrinsic to, or a part of, the alleged crime, and not admitted solely to demonstrate bad character. *See id.*; *see also United States v. Brewer*, 1 F.3d 1430, 1436 (4th Cir. 1993) ("While Rule 404(b) forecloses admission of similar acts evidence simply to prove a defendant's bad character, it permits such evidence where necessary to provide the context or *res gestae* of the charged offenses.").

5

So, what is the difference between extrinsic and intrinsic evidence? Extrinsic evidence means evidence of conduct that is separate from or unrelated to the charged offense. *See Brizuela*, 962 F.3d at 793. Take *Brizuela*, in which we reversed a doctor's conviction for unlawful distribution of controlled substances. We held that the testimony of several patients about uncharged prescriptions the doctor gave them was not necessary to complete the story of the doctor's prescriptions that were charged because none of the acts described arose from the same transaction of the charged offenses. *Id.* at 795. For that reason, the testimony about the uncharged prescriptions was extrinsic and improper. *Id.* at 796. In contrast, evidence is intrinsic—and sometimes referred to as *res gestae*—when it is related to acts that are a part of the alleged crime. *See id.* Evidence is related to acts that are part of the alleged crime when it arises out of the same series of transactions as the charged offense or when it is needed to complete the story of the crime on trial. *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994); *see United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) ("Evidence is intrinsic if it is necessary to provide context relevant to the criminal charges." (internal quotation marks omitted)); *see also Sprinkle v. United States*, 150 F. 56, 61 (4th Cir. 1906) ("The res gestae may be, therefore, defined as those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act." (internal quotation marks omitted)).

While that explanation is a good start, we still need to know what is required for evidence to complete the story of the charged crime. To do that, the evidence of the uncharged conduct must be "probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate

view of other evidence or of the story of the crime itself." *Brizuela*, 962 F.3d at 795. Assessing whether evidence is needed to complete the story of a charged offense "requires a hard look to ensure that there is a clear link or nexus between the evidence and the story of the charged offense, and that the purpose for which the evidence is offered is actually essential." *Id.* "Otherwise, the 'complete the story' doctrine might be used to disguise the type of propensity evidence that Rule 404(b) is meant to exclude." *Id.* (quoting *Kennedy*, 32 F.3d at 885). For example, in *United States v. Chin*, 83 F.3d 83, 87–88 (4th Cir. 1996), we recognized that testimony about murder-for-hire was intrinsic to charges of distribution of heroin because the murder statements were made during an exchange of heroin for cash and were thus part of a drug deal. As a result, that testimony was intrinsic to the charged heroin distribution offense and properly admitted.

Applying that standard here, the district court did not abuse its discretion in admitting the uncharged letter. As it explained, the letter provided necessary contextual information relevant to elements of the crimes on trial. To convict Beeman of mailing a threatening letter to the investigator, the government had to "establish that the defendant intended to transmit the interstate communication and that the communication contained a true threat." *United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994). As to the issue of whether the letter was a true threat, the government had to convince the jury that the charged letter was a serious statement expressing an intent to do harm. *See Virginia v. Black*, 538 U.S. 343, 359 (2003). And the government had to prove Beeman sent the letter to Harris.

7

The uncharged letter addressed all these points. It threatened to kill the investigator. While the charged letter did as well, the uncharged letter provided more evidence of the seriousness of the threat. For example, it escalated the threat to kill others besides the investigator and to blow up all sorts of property. Next, the uncharged letter helped the government prove motive. It referenced people and agencies involved in the Norfolk case, showing that Beeman's threats against the investigator stemmed from her role in the earlier prosecution. Finally, the uncharged letter helped the government establish that Beeman wrote the charged threatening letter to the investigator. It showed that the text followed a pattern and used the same bold typeface and consistent structure. The handwriting on the letter and envelope further linked Beeman to the charged letter.

For these reasons, the uncharged letter addressed elements of the charged offense. As such, it completed the story of the charged letter. Thus, the district court did not abuse its discretion in admitting the uncharged letter.

But even assuming the uncharged letter should not have been admitted as intrinsic evidence, the district court did not err in admitting it under Rule 404(b). "Rule 404(b) prohibits the introduction of evidence of prior acts for the purpose of proving the character of a person." *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007). But while evidence of other acts is not admissible to prove bad character or propensity, that evidence can be used for other purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Queen*, 132 F.3d at 994 (quoting Fed. R. Evid. 404(b)). Combining Rules 403 and 404(b), evidence of uncharged conduct can be admissible if: (1) the prior-act evidence is relevant to an issue other than character;

8

(2) the evidence is necessary to prove an element of the crime charged; (3) the evidence is reliable; and (4) its probative value is not substantially outweighed by its prejudicial nature. *Id.* at 995. "[W]e [] review a district court's determinations of the admissibility of evidence under Rule 404(b) for abuse of discretion, as we do generally for evidentiary rulings." *Id.*

Under this review, we find no error with the district court's alternative basis for admitting the uncharged letter. As already discussed, the uncharged letter was relevant to motive; it was relevant to the issue of real threat; and it was relevant to the issue of whether Beeman, rather than someone else, mailed the charged letter. For those same reasons, the letter helped establish that Beeman made a true threat, which is an element of the crime. And it was reliable. Although Beeman questioned the evidence that he sent any of the letters, the uncharged letter had many of the same characteristics as the charged letters. What's more, a handwriting expert testified that the same author wrote both the charged letters and the uncharged letter.

Finally, we find no error in the district court's rejection of Beeman's primary argument—that the uncharged letter was unfairly prejudicial. According to Beeman, the uncharged letter did not contain any meaningfully different information than that contained in the charged letters. He claims admitting that evidence permitted the government to pile on evidence in a way that inflamed the jury.

To be sure, the letter contained dramatic evidence. And it was no doubt prejudicial to Beeman. But the point of any evidence the government would introduce would be to prejudice Beeman in the sense of trying to prove his guilt. The relevant question is whether it was unfairly prejudicial. *See United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990)

9

("True, it was prejudicial to the defendants in the sense that it bolstered the prosecution's case, but under that definition, all incriminating evidence is prejudicial. The primary impact of the evidence was to demonstrate a string of robberies committed in the same manner and that type of evidence was certainly proper."). In deciding that it wasn't, the district court balanced the probative value of the evidence from the letter against any potential for unfair prejudice.

For good reason, we give district courts wide discretion in resolving these types of questions. They have a better view of evidentiary questions than we do and more experience answering them. While we review sterile written transcriptions of proceedings, district courts experience those dynamic proceedings live, observing witnesses and evidence firsthand. For that reason, we only reverse these types of decisions if the district court abuses its discretion. That means we are not permitted to reverse just because we might have answered the same question differently. We may only reverse if the district court acted arbitrarily or irrationally, failed to consider judicially recognized factors constraining its exercise of discretion, relied on erroneous factual or legal premises or committed an error of law. *See Delfino*, 510 F.3d at 470. Here, the district court acted within its discretion in concluding that the uncharged letter provided additional evidence of motive, the seriousness of the threat and who wrote the charged letter.

III.

Next, Beeman argues the district court abused its discretion in empaneling an anonymous jury, where the court and lawyers would refer only to juror numbers in open

10

court. Because of Beeman's history of threatening those involved with his prosecution as well as other individuals, the government moved for that procedure. Beeman did not object to receiving a redacted jury list. But he did object to referring to the jurors by their numbers in open court. Beeman argued that the procedure would send the message to the jury that he was dangerous. The court granted the government's motion. But it provided Beeman's counsel "with an unredacted juror list for his use in voir dire examination and a redacted juror list for conferring with Beeman." J.A. 201.

A district court may empanel an anonymous jury "only in rare circumstances when two conditions are met: (1) there is strong reason to conclude that the jury needs protection from interference or harm, or that the integrity of the jury's function will be compromised absent anonymity; and (2) reasonable safeguards have been adopted to minimize the risk that the rights of the accused will be infringed." *United States v. Dinkins*, 691 F.3d 358, 372 (4th Cir. 2012); *see also* 28 U.S.C. § 1863(b)(7) (A district court may empanel an anonymous jury, keeping the names of jurors confidential, in a non-capital case in which "the interests of justice so require"). But even if the circumstances warrant such a procedure, courts must consider whether a defendant's constitutional right to a presumption of innocence is impacted or whether the procedure would otherwise impede a defendant's constitutional right to trial by an impartial jury. *See Dinkins*, 691 F.3d at 372.

We have recognized a non-exhaustive list of five factors that inform the "strong reasons supporting the empaneling of an anonymous jury." *Id.* at 373; *see also United States v. Mathis*, 932 F.3d 242, 252–53 (4th Cir. 2019). Those factors are:

11

> (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*Dinkins*, 691 F.3d at 373 (*quoting United States v. Ross*, 33 F.3d 1507, 1520 (11th Cir. 1994)). The presence of any one factor or even a set of factors does not automatically compel the empaneling of an anonymous jury. *See id.* And the court's decision to empanel an anonymous jury in a non-capital case "must rest on something more than speculation or inferences of potential risk." *Id.* at 374. Finally, we review challenges to empaneling anonymous juries for abuse of discretion. *Id.* at 371.

Here, one might question whether the jury was in fact anonymous. After all, the defendant's counsel had the jurors' names. But assuming, without deciding, that procedures used by the court amounted to empaneling an anonymous jury, the district court did not abuse its discretion. It considered the non-exhaustive list of factors that inform the jury's need for protection from interference or harm and the implementation of reasonable safeguards to minimize the risk of infringing on Beeman's rights. In deciding that the empaneled jurors should remain anonymous, the court pointed to Beeman's previous attempts to interfere with the judicial process, his previous threats to harm those involved in his prosecution, the potential for Beeman to face a lengthy prison term and the potential for the jury to face harassment if their names became too public. At the same time, the district court protected Beeman's constitutional rights by giving his counsel an unredacted list of the jurors, by not drawing attention to the issue and by telling the jury that the process

12

was being used to avoid unnecessary publicity rather than because Beeman was dangerous.

Thus, the court did not abuse its discretion in deciding to empanel an anonymous jury.

IV.

Finally, Beeman challenges the district court's denial of his motion for a mistrial after improper arguments by the government during closing argument. During the government's closing argument, Beeman objected when the prosecutor transitioned from talking about the objective person to asking the jurors to think about how they would feel if they received the letters.

> [MS. MASTANDREA-MILLER:] And when he writes the vitriol, the nastiness in the headings Dear Fag, Dear Faggot, Dear C, Dear Three Hole Wonder C, he's setting up the person for what's to come.
>
> And think about what it is that you would feel. As an objective person, you're allowed to look at what an objectively reasonable person would feel having received a letter like this. And so you can assess it and say "If I saw that – if I open up a letter and that's what I see, how am I going to feel about that?"
>
> MR. DINKIN: Judge, I don't think I've ever objected in a closing statement ever.
>
> THE COURT: The standard is an objective person.
>
> MS. MASTANDREA-MILLER: Right.
>
> THE COURT: And appealing to the jury's feelings should not be done.
>
> MS. MASTANDREA-MILLER: Objective person meaning a person who would look at this from a distance as opposed to their personal view.
>
> THE COURT: I'm going to tell you all to disregard the things about how you'd feel. You're looking at this from an objective perspective.

13

MS. MASTANDREA-MILLER: Right. Not from how you personally feel. Look at it from an objective point of view.

J.A. 444–45.

On appeal, Beeman argues that the prosecutor's comments were a significant deviation from the applicable jury instructions in this case and, although corrected quickly, fundamentally misstated the law. He insists that the misstatement could have misled the jury to convict Beeman based on an incorrect standard of law. In response, the government maintains that its improper statement was isolated, addressed and corrected quickly both by counsel and the court, that the court properly instructed the jury on the law, and that Beeman cannot show any prejudicial effect on his rights to warrant a new trial.

The denial of a defendant's motion for mistrial is within the sound discretion of the district court and will be disturbed in only the "most extraordinary of circumstances." *United States v. Dorlouis*, 107 F.3d 248, 257 (4th Cir. 1997). Similarly, we review the district court's ruling on an objection made during closing argument for abuse of discretion and will only reverse when an abuse of discretion constitutes prejudicial error. *See United States v. Lopez*, 860 F.3d 201, 215 (4th Cir. 2017).

To evaluate whether comments made during a closing argument are prejudicial to the point of requiring a mistrial, we consider six factors. Those factors are:

(1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

14

*United States v. Wilson*, 624 F.3d 640, 656–57 (4th Cir. 2010). These factors are to be viewed in the context of the trial as a whole, "and no one factor is dispositive." *United States v. Lighty*, 616 F.3d 321, 361 (4th Cir. 2010).

Beeman contends that the government's use of a subjective standard for evaluating a true threat in its closing argument was prejudicial error. But, even if this was improper, Beeman has failed to establish that the statement was prejudicial to the point of depriving him of a fair trial. The statement in question was brief and isolated. More importantly, it was corrected immediately by both counsel and the court. The district court gave both a curative instruction and proper legal instructions to the jury, making it unlikely that the statement played any noticeable role in the jury's verdict. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 501 (4th Cir. 2001) (recognizing the assumption that jurors follow the court's instructions).

On top of that, the government presented overwhelming evidence of Beeman's guilt. Considering the misstatement during closing argument in context of the entire trial, we find no prejudice to Beeman from the closing arguments. Accordingly, we affirm the district court's denial of the motion for a mistrial.

V.

For the foregoing reasons, the district court's judgment is,

*AFFIRMED*.

15